By the Court, Mullin, J.
It is found by the referee that there was a verbal agreement between the plaintiff and Cleveland, that the former should buy logs, pay hired help for sawing them, and was to hold and own the lumber and have entire control, so far as selling was concerned, and when the lumber was sold, the plaintiff was to pay himself for all advances and interest, and the surplus was to be paid to Cleveland.
. The lumber in question was made from logs purchased by the plaintiff under this agreement, and was therefore, as between the plaintiff and Cleveland, the property of the plaintiff. It is found by the referee that there was an arrangement between Cleveland and other persons, parties to a note made for the benefit of Cleveland, that he should get out and deliver to the defendant 100,000 feet of plank-road plank, in payment of said note, and as between the parties, the defendant agreed to assume and pay the note. The plaintiff was informed of this arrangement, and of a modification of it by which another kind of lumber was to be delivered in place of the plank. It is further found that the plaintiff was informed before any of the lumber was delivered to "the defendant, that he would or was to pay $4.50 per thousand for it; that he knew of the delivery, was frequently at the mill while it was being sawed, and never intimated that he was owner or had any claim on it, until after the spring of 1856. It is also found that there was no evidence of any sale by Cleveland of lumber from logs purchased by the plaintiff, except that sold to the defendant. It is also found that Cleveland told the plaintiff that the defendant knew the lumber was his, and that Cleveland owned logs which he brought from *244 his old mill to the one leased oí Conant & Penfield, and others which he had purchased but which had not been delivered.
It follows from these findings that the plaintiff owned the lumber in question; that Cleveland did not own it, and had no authority to sell it; that the defendant, having purchased it of Cleveland, became liable to pay the plaintiff the price, unless there is something in the case which estops the plaintiff from asserting his title, or the defendant is shown to be a bona fide purchaser for value and without notice. The estoppel rests on this: that the defendant purchased of Cleveland, who was the ostensible owner, the plaintiff having notice that the defendant was receiving it in payment of an old indebtedness due to him from Cleveland, and that he made no claim to the property, or any objection to the .delivery. It is found, however, that the defendant knew the lumber was the property of the plaintiff. The case then stands thus: Cleveland, being indebted to the defendant, sells and delivers to him property which he (defendant) knows is not Cleveland’s, but is that of the plaintiff, in payment of such debt, and the plaintiff makes no objection to the transfer. This does not constitute án estoppel, unless the defendant is a bona fide purchaser. The defendant is not a bona fide purchaser within the cases, for two reasons: 1st. He took the property in payment of á precedent debt; and 2d. He had notice of the plaintiff’s title.
• Then as to the fact that Cleveland was in the possession of the property and clothed with the indicia of ownership, and that therefore the title passed, it seems' to me that the principle which is sought to be applied, has no application to the case. The indicia referred to in the cases is written evidence of title. If these were not so, then every person in possession of another’s property would be so far clothed with the indicia of *245 ownership that he might sell and defeat the title of the true owner.
The cases asserting that past indebtedness is not such a consideration as will render a purchase, unobjectionable in all other respects, bona fide, are seriously shaken by Thompson v. Blanchard, (4 N. Y. 303.) In that case Thompson sued Blanchard and Wheeler in trover, for a quantity of wool, cloth, &c. On the trial it was proved that Wheeler was a manufacturer of woolen cloth, &c., at Granville in this State, and had gone to Mew York and purchased a quantity of wool, and paid for it by an endorsed note, on his return. After his arrival at home he procured the plaintiff to endorse a note for some of the wool, and the same was sent to the vendor and the wool forwarded. At the time of endorsing the note, Wheeler gave to the plaintiff, a writing, in which it was recited that the plaintiff had endorsed the note to pay for the wool, which had been purchased and sent forward tin his (Wheeler’s) name, and he (Wheeler) agreed that the plaintiff should own the same, and if manufactured, might own the cloth until the’note was paid. Subsequently Wheeler purchased another lot of wool on the same terms, for which the plaintiff endorsed his note, and Wheeler gave him a writing in substance the same as the one above described. Both lots of wool were received by Wheeler and manufactured into cloth, and the same was disposed of by Wheeler. Blanchard received from Wheeler some of the cloth to apply on a previous mortgage held by him on Wheeler’s factory, and to secure him for advances made for Wheeler. It was for the cloth so received that the suit was brought. It was proved that the plaintiff never had possession of the wool; that Wheeler carried on the business in his own name, claimed and sold the cloth as his own, and the plaintiff knew of his so doing. The judge charged the jury that the writings given by Wheeler to the plaintiff were not mortgages, but that title to the *246 wool passed to the plaintiff, and that he was entitled to recover. The Court of Appeals held that the papers were mortgages, and not having been filed, were void against subsequent bona fide purchasers, and creditors and mortgagees, and that Blanchard, being a bona fide purchaser, was protected. Judge Jewett proceeds to say that the plaintiff, on the evidence, was estopped from alleging title to the property, having stood by and seen Wheeler dispose of the cloth, &c., as shown, to bona fide purchasers. If Blanchard, in that case, was a bona fide .purchaser, it would seem to follow that the defendant in this case was. But unfortunately the referee finds that the defendant knew .that the plaintiff was the owner of the property. I can find no case which holds that I am estopped from asserting title to my property because I permit another, to sell it to a third person to apply upon a-prior indebtedness, the latter being, at the time, aware of my title. I should be very glad to uphold this judgment, so far as would be giving effect to the principle that a person so standing by should be estopped, as it is applying to the business of life a rule resting on the highest justice and purest morality. But as I cannot make the law, I must administer it as. I find it; and I find no authority in the law books for such an adjudication.
[Onondaga General Term,
January 5, 1864.
Allen, Bacon, Morgan and Mullin, Justices.]
I think the judgment is wrong, and should be reversed, and-a new trial ordered, costs to abide the event.
New trial granted.